I call the matter of Abdel-Ali El-Ganayni v. U.S. Department of Energy. May it please the Court, Keith Whitson, Schneider, Harrison, Siegel, and Lewis, on behalf of the appellant, Abdel-Manaym Ali El-Ganayni. I'd like to reserve three minutes rebuttal if I may. Great. Trust us. If we say national security, you have to take our word for it. And no one can question us on whether that's appropriate. That's what the government is arguing in this case, and that's what the district court's ruling allows. But national security is not, and has never been, a magic phrase that can be used to deny review of colorable constitutional claims or challenges to the process or lack thereof. Wait, can we? The government make that argument in Egan successfully? Yes, to the merits of the claim, Your Honor. Right, exactly. And we are not asking for a challenge to the merits. We are not asking for a challenge to, for instance, if the underlying reason, which we don't know yet, by the way, if the underlying reason is that Dr. El-Ganayni has a friend who also has a friend who is suspected of links with a terrorist organization. If that's the link and they say, okay, that's national security, we can't challenge it. That goes to the merits. We'll get to that. Can we start at one very basic point or move on to one very basic point? Would you agree that there is no fundamental right to a security clearance? Agreed. Okay. That is a starting point. So what is the relief here that Mr. El-Ganayni ultimately wants? He wants a hearing. He wants to know why. What kind of a hearing? Our first request is a hearing pursuant to the DOE regulations, an administrative hearing within the Department of Energy as set forth in the DOE regulations. Those regulations provide specific provisions for notice, for submission of evidence, and for hearings. And there are specific provisions in those regulations to protect against the disclosure of sensitive information. They themselves provide for a truncated process, if you will, that would protect the security interests that the DOE claims are at stake. Yes. There are numerous provisions there to protect the identity of informants, to protect the source of documents. In some cases, the hearing officer can choose to simply provide summaries of the information to the aggrieved individual or perhaps nothing at all. I have been struggling, Mr. Whitson, with trying to figure out how this works. Probably it's the old trial judge in me. But I know that what you want is process. You want a hearing. And I'm trying to figure out how that works, practically speaking, on the ground, where you have this invocation of national security interests and where it would appear that we cannot second-guess the methods. How does a district judge make that work? Well, Your Honor, the first suggestion I would have to the district court is to require the DOE, you did not follow your regulations here, go back and do the hearing properly. The hearing officer has a security clearance. In fact, the hearing officer in this very case said, wait a minute, this notice is entirely insufficient. Go back, give us some more reasons, and then we'll get to the next step as to whether we can consider that. Okay, you want to follow that procedure. But the Secretary of DOE said partway through that procedure, wait a minute, I'm going to use another part of the procedures to certify that national security necessarily trumps the right to have a hearing, and we're not having a hearing. How can you argue that one part of the procedures have to apply to your client, but yet the other part of the procedures, which can be triggered on national security concerns, don't apply to the Secretary of DOE? Two reasons, Judge Fischer. First of all, the DOE regulations do not allow for the procedure utilized by the Secretary. We've briefed the fact that that is in the executive order on which the regulations are based. But when drafting those regulations, the Secretary decided not to implement that part, or implemented it in a more limited fashion, such as Section 710.26, which has all these specific precautions to protect that national security information. All right, what if a hearing is scheduled, as you've suggested should occur here, and the Secretary simply submits an affidavit or a certification that declares that he did not consider al-Dinayni's speech of any kind, his religion, or his national origin in revoking the security clearance? Is that a sufficient process? Well, the hearing officer under the regulations has a lot of discretion to decide how to utilize and how to protect that information. If the hearing officer decided that that was sufficient information, and under the appeal process that is in the DOE regulations, if the appeal panel above the hearing officer decided that was sufficient, they would have at least complied with the regulations there. And so obviously, we would have a much more difficult argument to make at that point. But here, they haven't told us anything. They've just shouted out the words, national security. And whether or not that is true, the courts of this nation have, for hundreds of years, not allowed that simple phrase to preclude review of government actions that involve much more national security, involve enemy combatants in the Hamdi case, the publication of the Pentagon Papers, taking over the nation's steel mills. In all of these cases, national security was the buzzword. And the court said, we're not going to just accept your word that it's national security. There has to be some review. Would you at least grant, Mr. Woodson, that in your recitation of those cases, at least with respect to some of them, we were dealing with some fundamental rights? There's a lot of rhetorical appeal, I will concede, to the argument you just made. But Hamdi, Boumediene, we were talking about individuals' liberty, talking in some cases about their access to the right of habeas corpus. And you've conceded, in this case, nobody has a right to a national security claim. But when, Your Honor, the exercise or the case is about rhetoric, is it, or about the invocation of a phrase? Well, it's about precluding any knowledge of the underlying reasons. If the Secretary's reason for revoking the security clearance in this case is that Dr. El-Ghani is Muslim, that violates a fundamental right. If the reason for the revocation is that Dr. El-Ghani spoke out against the FBI raid, that is a violation of a fundamental right. And in addition to those fundamental rights, the cases are clear that we do have a right to force the Department to follow their own regulations. So yes, I agree, there is no fundamental right to a security clearance. But there is a fundamental right to the First Amendment right of free speech, freedom of religion, to equal protection. And if we're going to allow the government to avoid those protections by simply saying those two words, then we have no way of protecting those fundamental rights. You know, this may sound like an odd question, but can the executive revoke a security clearance based on a constitutionally prohibited rationale? No. Is there authority supporting your position? Well, I would refer the court to Webster and decision. But then in the subsequent decision said, well, we can review for constitutional defect. So there is a difference between analyzing the merits, whether something affects national security or not, and whether a colorable constitutional claim has been asserted. Staney said the same thing. Mackey, again, this court, said the same thing. But isn't that decision non-justiciable? The decision in Webster, the decision that Judge Smith posited, the revocation of security clearance as Judge Smith posited for an unconstitutional reason, isn't that a non-justiciable decision? No, I would say no, Your Honor. And the reason is this. There are certain political questions and there are certain matters that Egan covers that says we can't question the exercise of the, quote, predictive judgment, unquote, of the executive. They have the expertise. But when you're saying that somebody can't have a security clearance because they're Muslim or because they criticize the FBI raid, that has nothing to do with predictive The Secretary of Energy could revoke security clearances for any reason, whether it be gender or ancestry or political ideology. And that is too close to what our founders tried to prevent with our Constitution by setting up the system of checks and balances. We don't want that absolute monarchy. You're right that they are two different issues, but can you decide the first one, that is, whether being a Muslim played a role, without evaluating the reasons, the national security reasons, for the DOE's action? In other words, what's the Brazil case? It says, yes, you can assert constitutional claims as long as they don't, of individual decision, as long as they don't require you to look into the merits of the national security decision. But as a realistic matter, as the Brazil court said, if the government's reason, if it's a weak reason, then it's their pretextual argument. What do you say to their pretext? You've got to evaluate the strength of what their reason is in order to determine whether you're going to believe it or whether you're going to think, no, this has got to be his religion or his free speech. In the Brazil case that you mentioned, there were reasons given why the government believed that national security would be adversely affected. There were several disciplinary and interpersonal problems, altercations with other mariners, displays of disrespect towards superiors. The reasons were given. And once those reasons are given, the pretext comes into play if there's a challenge saying, well, those aren't the real reasons. The real reason is because of my race. That's what Brazil argued. We don't have that here. We don't have the underlying reasons. We just have the ultimate conclusion. We're not challenging, oh, no, this particular reason is not really the reason that you found national security because they never gave it to us. So we don't even have a pretext argument at this point. We want the reason. We'd love to be able to have the choice if Brazil and the other cases permit to say there's a reason. But you just said, we want the reason. We want to know the reason. I mean, isn't that precisely the problem? The reason may be exactly what implicates the national security concern, which is part of why I asked you earlier, is it enough simply to assert what the reason or reasons were not? Well, and as I mentioned before, the hearing officer gets to make that determination in the first place. At least, if the hearing officer decides that we can't know the reason because of national security, well, at least we take a look at this and review it. It wasn't just one person in an office in Washington, D.C. making that decision. At least there was some review. We'll have you back. Thank you. Ms. Brinkman. May it please the Court, my name is Beth Brinkman. I represent the appellees, the United States Department of Energy, and the individual energy official. With me at counsel table are Marsha Solz and Mame Ewosei-Mensei, also representing the appellees. Ms. Brinkman, is there any reason why we would not invoke jurisdiction in this case? Yes, Your Honor. We believe that this case is controlled by Egan and this Court's precedent in Maki and Steny. And three answers to respond. The first one being... We didn't have a jurisdictional problem in Maki or Steny, did we? Here the question is a question of subject matter jurisdiction because this goes to the merits of the decision. And the fact that it is couched in terms of constitutional doesn't change that. There is no way you can separate this from the merits. And the due process claim here, the one claim that would be justiciable, there is no constitutionally protected right to property or liberty or security clearance as the Court already pointed out. And the procedures were complied with here under the executive order in the text of the regulation itself. If I could turn to the question about the Constitution. Egan makes clear in its rationale and its explanation about the nature of a security clearance and that under the Constitution that is given to the authority of the Commander-in-Chief, the President of the United States. And here there have been executive orders. The first executive order dates from 1960 and was issued by President Eisenhower. Then a later 1995 executive order issued by President Clinton. Here the Secretary of Energy acted pursuant to that authority and certified that these processes could not be provided here without... It could not be provided consistent with the national security. The fact that a judicial review of the constitutionality that is not available does not support plaintiff's side. That simply means that under the framework of the Constitution that has been given to the executive branch. What recourse does Mr. Elgenady have if the Secretary of Energy revoked his security clearance simply because he is a Muslim? Well, a couple things I would point out, Your Honor. First of all, I think the way in which these executive orders were crafted took into account the serious natures of these issues. And it's not a low-level manager or supervisor here. It is a member of the President's Cabinet who issued the certificate here. And I would point out it's a member of the Cabinet who has taken an oath to uphold the Constitution of the United States. And when there are issues that are not subject to judicial review that are exclusive authority of the executive, this Court, in fact, has recognized that there are political factors that can weigh in and influence that. In a case that the plaintiff cites about the closing of immigration hearings. So is your response, which... I'm sorry, I haven't regarded exactly the answer to my question, that we just really can't go there? Well, Dr. Ghannani got the process that he was doing here because it did go to the level of the Secretary of Energy. And he issued this certification based on these executive orders. To the extent that he is seeking judicial review, that is clearly foreclosed here by the Supreme Court's decision in Egan. And other courts that have looked at this issue have recognized that to simply couch something in a constitutional claim would really be to do a bypass around that separation of powers. Ms. Brinkman, what troubles me in the analysis of what the Supreme Court has said in this area is Webster. How do you square Webster, which was decided in the same year Justice Blackmun joined in the opinion and he wrote Egan? How do you square Webster with Egan? Well, the first thing I would point out, I think it's very interesting, they were decided within several months of each other in February. Chief Justice Rehnquist wrote Webster joined Justice Blackmun's opinion in Egan and vice versa. So I don't think that they saw inconsistency between this at all. And it's because of the nature of the authority. Egan was about the lack of institutional competence and the delegation from the Constitution to the President of the security clearance determination. Webster was a case about discharge. It was not about a clearance revocation. And it was under the National Security Act and the procedures under that. And Chief Justice Rehnquist ultimately explained that when there's a statutory framework like that, Congress has to be expressive about precluding judicial review. Very different. Now that has gotten confused in some of the lower courts, admittedly. And I think Judge Kaczynski wrote an interesting concurrence to his own opinion. He was confused himself. In the Dorfmott case, he pointed out, you know, we really haven't, you know, decided some of these issues. He explained the different analysis between Webster and Egan. So I think that is very clear about why Webster would not apply. I would also... How do you reconcile? I mean, didn't we reconcile Webster and Egan in Taney? Yes. And doesn't Taney indicate that we have jurisdiction to entertain constitutional claims? In Steny and Maki, I think what this court really looked to and held clearly that there is not justiciability of the merits determination. And drew a line, and Maki made this very clear in 2006 that there might, or in 2008, that there could be some process claims. And that's the last claim we would talk about. I think it's really an APA type of process. But this determination that plaintiff challenges cannot be separated from the merits here. The certification that the Secretary of Energy... Taney, you're saying, is limited to process claims. Under this court's precedent, the Maki case in the Steny, yes. Maki said there's merits, and there's process. Merits, you can't go into. And Maki was a very good illustration of this. There were at least two instances in analyzing that Title VII claim. It was a Title VII claim that went forward. It was a mixed motive. Yes. And it wasn't a challenge to the security clearance at all. And twice in the analysis of the opinion, when it got to a point where you had to look at the security clearance, you said, can't do it. It did that when it was talking about some notice. And they said, we can't do it. You don't have clearance. Can't look at the merits. And also when he was claiming the initial suspension of pay issue and said, that's separate, but we can't look at the merits. So yes, I think that's already been decided by this court. And it makes sense here because the certification that the Secretary of Education did pursuant to these executive orders involved the same kind of predictive judgment about what needs to be done to preserve the national security and whether or not something can be done clearly consistent with national security. Also, I should point out, if you look at the complaint in this case and counts one and two, they all are couched in terms of challenging the suspension and revocation. They are not challenging the ultimate process. That's part of the relief. But the challenge here was to the suspension and the revocation. If you look at the discovery that and all the information you have for suggesting that Dr. Algeny is no longer qualified for security clearance, that goes to the core of the merits. We'd also point out that the certification that the Secretary of Energy did here was to... Excuse me. And that discovery request was made when and where? That discovery request was made very early in the case. It was postponed and never acted on because of the motions that were sent forward. It was request number eight, Your Honor. Why can't we simply trust experienced district judges to win their way through those requests and provide protection where appropriate and where she or he deems national security interests to be at stake? A couple things. First of all, that's not what the Constitution says at core. That's not what the Supreme Court has recognized in Egan. That is for the executives, for the Commander-in-Chief. And a security clearance is such a unique discretionary decision. This is no kind of constitutionally protected right. This is the determination in this instance of access to warships, nuclear warships, the design, the building, the maintenance of the warships. And it is the Commander-in-Chief and the delegate of the Secretary of Energy who is constitutionally charged with protecting the national security and has to make those decisions. I think that's what Egan just makes so clear. And I would also say I think going back to the court's discussion of the Brazil case is a very good example of how merits and this kind of request for the reason for which the Secretary of Energy acted cannot be separated. I also wanted to briefly address the challenge to the compliance with the own procedures that there is no constitutionally protected right here of either property or liberty. So that due process claim has to fall. To the extent that Dr. El-Ghanani challenges the compliance with the Secretary of Energy's own procedures, he focuses on the regulation. And there's an express provision in the regulation that makes clear it was not intended to override more than 30 years of direct constitutional authority under the executive order. It's section 710.31c. And I'll quote it. It's only a long sentence. Nothing contained in these procedures shall be deemed to limit or affect the responsibility and the powers of the Secretary issued to subpoenas or to deny or revoke access to restricted data, national security information, or special nuclear material. That's precisely what the Secretary of Energy did here pursuant to the authority directly delegated from the Secretary of Energy. To the extent there could be any question about the interpretation of the regulations, this also was really the heartland of deference to administrative agency's interpretation. These are the Department of Energy's own regulations that they promulgated in 1994. There's absolutely no indication anywhere that there was some intent to abdicate the long existing authority of the Secretary of Energy, formerly the Atomic Energy Commission at the initial executive order at issue here from 1960. So the fact that the court here really got it right, the district court understood and did a very good analysis of the distinction between Webster and Webster, does not affect Egan, understood the nature of the security clearance, and also the fact that something is couched in constitutional terms does not change that does not separate Dr. Elginani's claims from the merits that the Secretary of Education is charged with determining and allowing access to national security information only if it's clearly consistent with national security. Thank you, Your Honor. Counsel just told this court that there's no difference between merits and constitutional claims. I quote from this court's decision in Mackey, quote, based on our precedent in Staney, we conclude that we have jurisdiction to review Mackey's claim of discrimination because a discrimination claim under a mixed motive theory does not necessarily require consideration of the merits of a security clearance decision, unquote. There is a difference. We can avoid the political question of whether something affects national security, whether there is a sufficient predictive judgment, while still analyzing for constitutional defect to make sure that the constitutionally prohibited reasons do not play a part in that process. And this is all about the process. This whole case is about the process. When Defendant Kupfer filed his certification on May 19th, he revoked Dr. Elginani's security clearance and said at the same time, we're not telling you why, we're not giving you any process. It's all about the process. Even that revocation of the security clearance is about the process. Even if we accept that. You are saying, again, it's all about the process. Earlier, though, you said you'd really like to know the reasons. And Mackey, we also said that while a certain review was appropriate, we said we cannot question the motivation behind the decision to deny Mackey's security clearance. How do you avoid that whole inquiry into motivation once you begin to explore, through the process you're asking, why the security clearance was denied or revoked? There are many potential problems that could come up through the hearing process once we know what the reasons are. We don't in this case. In Mackey, he was given a reason. The reason was that contact with foreign nationals. Here, we don't know the reason. We are not at a point where we can say the proffered reason of the government is a pretext. We don't know if we would make that allegation once we got the actual reason. At this point, we're assuming the real reason, so we don't get to the pretext argument. So we are not in a situation now where we are discussing the true motivation of the decision. Once a reason is proffered, whether to us or to the hearing officer, whatever the hearing officer decides, if we get to that point, we get to that point and maybe there's no jurisdiction at that point to hear a particular challenge. But we at least need to follow the process so we can get to that. If Staney and Webster stand for anything, they stand for the proposition that there are at least some claims that are reviewable with respect to the security clearance process. That's what we're asking. You have not appealed the denial of the due process claim, have you? That's correct. As in it quite arguable that perhaps you might be entitled to the process if you had a due process claim. Well, that's an independent reason for the process, yes, Your Honor. And we believe obviously that there is a right. We wouldn't have included that claim in our complaint had we not. But it's not before us. But it's not before you. Okay. Thank you very much, Mr. Whitson. Very good. We will take the matter under advisement.